**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ANGELO Q. WALKER,

    Plaintiff,

v.

                                      Case No. 10-13179

THE CITY OF DETROIT, et al.,

    Defendants.
_____/

**OPINION AND ORDER DISMISSING PLAINTIFF'S STATE LAW CLAIMS**

Pending before the court is Plaintiff's September 13, 2010, "First Amended Complaint," which alleges the following counts:

- Count I, violations of constitutional rights secured by the Fourth Amendment and actionable under 42 U.S.C. § 1983, as to all Defendants;

- Count II, violations of constitutional rights secured by the First, Fourth, Fifth and Fourteenth amendments and actionable under 42 U.S.C. § 1983, as to Defendant Brandon Pettit;

- Count III, violations of constitutional rights secured by the First, Fourth, Fifth and Fourteenth amendments and actionable under 42 U.S.C. § 1983, as to Defendant Kelly Lucy;

- Count IV, violations of constitutional rights secured by the First, Fourth, Fifth and Fourteenth amendments and actionable under 42 U.S.C. § 1983, as to Defendant City of Detroit;

- Count V, gross negligence as to Defendant Brandon Pettit;

- Count VI, gross negligence as to Defendant Kelly Lucy;

- Count VII, false arrest as to Defendant Brandon Pettit;

- Count VIII, false arrest as to Defendant Kelly Lucy;

- Count IX, false imprisonment as to Defendant Brandon Pettit;

- Count X, false imprisonment as to Defendant Kelly Lucy;

- Count XI, punitive damages; and

- Count XII, attorney's fees.

Counts I through IV state claims under federal law; Counts V through IX state claims under Michigan state law. While the court, technically, does not "dismiss" Counts XI and XII – for "punitive damages" and "attorney's fees" – those counts are not separate causes of action, as they are forms of potential relief to the other six counts.

As a preliminary matter, the court has original jurisdiction over Plaintiff's § 1983 claims. 28 U.S.C. § 1331. Because Plaintiff's state law claims arise out of the same incident and share a common nucleus of operative fact, the court could exercise its supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367. However, the court now considers if granting supplemental jurisdiction is in the interest of judicial economy, convenience, fairness and comity. The court determines that it is not, and will dismiss Plaintiff's state law claims.

**I. BACKGROUND**

According to Plaintiff's complaint, the Detroit Police Department arrested Plaintiff after a traffic stop, whereupon prosecutors charged Plaintiff with the offenses of Carrying a Concealed Weapon, Felon in Possession of a Firearm and Felony

2

Firearm. (Compl. ¶ 8). However, Plaintiff alleges, the case was later dismissed because "[d]uring the preliminary examination Defendant Lucy testified that the only reason the automobile the Plainitff was driving was stopped and searched was because he had run a stop sign," (*id.* ¶ 9), when "in fact, [there] was no stop sign at the intersection where Defendant Lucy testified the Plaintiff was stopped." (*id.* ¶ 10). Plaintiff further alleges that the alleged unlawful arrest resulted in "approximately nine to ten months" of incarceration between the time of his arrest and dismissal of the prosecution. (*Id.* ¶ 15). Accordingly, Plaintiff concludes, "Defendants Lucy and Pettit caused Plaintiff to be wrongfully arrested and wrongfully imprisoned while the criminal proceedings took place wherein there was no probable cause to do same." (*id.* ¶ 14). Plaintiff seeks relief under federal and state law.

## II. DISCUSSION

A district court has the power to dismiss or remand claims *sua sponte* for lack of subject matter jurisdiction. *See, e.g.*, *Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 607 (6th Cir. 1998). Claims with original jurisdiction in a district court have either federal question jurisdiction pursuant to 28 U.S.C. § 1331 or diversity jurisdiction pursuant to 28 U.S.C. § 1332. In some circumstances, additional claims alleging violations of only state law may be heard under the supplemental jurisdiction granted pursuant to 28 U.S.C. § 1367.

In *United Mine Workers of America v. Gibbs*, the Supreme Court broadly authorized federal courts to assert jurisdiction over state law claims when there existed a "common nucleus of operative fact" compromising "but one constitutional 'case,'" so long as the court had original jurisdiction over at least one claim. *Gibbs*, 383 U.S. 715,

725 (1968). While this decision granted district courts broad power over pendent state claims, it also recognized discretion in hearing such claims: "[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over the state claims . . . ." *Id.* at 726. The Court stated that pendent party jurisdiction may be denied "if the federal claims are dismissed before trial," if "it appears that the state issues substantially predominate," or "if the likelihood of jury confusion" would be strong without separation of the claims. *Id.* at 726-27.

Congress later codified the power of a federal court to hear state claims. 28 U.S.C. § 1367. Similar to the standards articulated in *Gibbs*, the statute recognizes a court's discretion to decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* Subsections two and four are applicable to the case at bar.

Though Section 1367 technically superseded *Gibbs*, courts agree that "the exercise of discretion . . . is still informed by whether remanding the pendent state claims comports with the underlying objective of 'most sensibly accommodating' the values of 'economy, convenience, fairness and comity.'" *Executive Software N. Am.,*

4

*Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); see H.R. REP. NO. 101-734, at 29 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6860, 6875 (indicating that, under *Gibbs* and "current law, subsection (c) requires the district court, in exercising its discretion, to undertake a case-specific analysis.").

## A. DISMISSAL PURSUANT TO 28 U.S.C. § 1367(c)(4)

A district court may deny supplemental jurisdiction pursuant to § 1367(c)(4) if, "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4) (2006). "Congress's use of the word 'other' to modify 'compelling reasons' indicates that what ought to qualify as 'compelling reasons' for declining jurisdiction under subsection (c)(4) should be of the same nature as the reasons that gave rise to the categories listed in subsections (c)(1)-(3)." *Executive Software*, 24 F.3d at 1557. Once the court decides that there are compelling reasons to decline jurisdiction, the factors that inform this decision usually will demonstrate how the circumstances confronted are "exceptional." *Id.* at 1558.

### 1. "Compelling Reasons" for Dismissing Plaintiff's State Law Claims

Courts generally accept that "compelling reasons for the purposes of [§ 1367](c)(4) . . . should be those that lead a court to conclude that declining jurisdiction best accommodates the values of economy, convenience, fairness and comity." *Id.* at 1557 (internal citations omitted); *see Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1569 (11th Cir. 1994). When deciding whether to agree or decline to exercise jurisdiction over supplemental state claims, the court considers the circumstances of the particular case, the nature of the state law claims, the character

5

of the governing state law, and the relationship between the state and federal claims (including the possibility of jury confusion).

Litigation in federal court that mixes federal law claims with supplemental state law claims can cause procedural and substantive problems; in the interests of judicial economy and convenience, these problems should be avoided. *Id.* Even where, as in the present case, the federal and state claims arise out of the same factual background, the simultaneous litigation of such claims may prolong pre-trial practice, complicate the trial, lengthen and make more complex the jury instructions leading to potential confusion of the jury, result in inconsistent verdicts, and cause post-trial problems with respect to judgment interest and the availability of prevailing party attorney fees. Consequently, the apparent judicial economy and convenience to the parties of a court exercising supplemental jurisdiction over state claims may be substantially offset by problems that are simultaneously created. The court will review the federal and state claims in some detail to determine if supplemental jurisdiction should be exercised over the state claims.

**a. Elements of the Claims**

To prove his claims under Section 1983 (Counts I through IV), Plaintiff must show that he was deprived of a right secured by the federal Constitution and that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir.1996). Conversely, Plaintiff's state law claims involve slightly different standards. The claim of false arrest (Counts VII and VIII) requires a showing "that the arrest was not legal, i.e., that it was made without probable cause." *Blase v. Appicelli*, 195 Mich. App. 174,

6

177-78 (1992) (citing *Young v. Barker*, 158 Mich. App. 709, 721 (1987)). Claims of false imprisonment (Count IX and X) require a showing of "(1) an act committed with the intention of confining another, (2) the act directly or indirectly results in such confinement, and (3) the person confined is conscious of his confinement," and, finally, such "restraint must have occurred without probable cause to support it." *Walsh v. Taylor*, 263 Mich. App. 618, 627 (2004) (internal citations omitted). Finally, "gross negligence," which is asserted in Counts V and VI, "is defined as 'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.'" *Lim v. City of Rochester & Rochester Police Dep't*, No. 289154, 2009 Mich. App. LEXIS 2686 (Dec. 22, 2009) (quoting Mich. Comp. Laws § 691.1407(7)(a)).[1] While these state law claims are similar to the federal claims, they are not identical.

Additionally, in Michigan, the law of municipal liability is markedly different from that under § 1983. Unlike federal municipal liability, which examines whether the municipality authorized or acquiesced in the alleged conduct, state liability is precluded by the immunity statute, Mich. Comp. Laws § 691.1407, which states: "a governmental agency is immune from tort liability if the agency is engaged in the exercise or discharge or a governmental function." § 691.1407(1). Under the statute, a municipality can only be held liable "with respect to providing medical care or treatment to a patient." § 691.1407(4).

---

[1] While Plaintiff alleges gross negligence claims in addition to his intentional torts, the court is somewhat skeptical as to whether the facts alleged in the complaint support a claim for *negligence*. *See VanVorous v. Burmeister*, 687 N.W.2d 132, 143 (Mich. Ct. App. 2004) ("[T]his Court has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence.").

Under the Michigan provision, municipalities enjoy broad immunity and there is no question as to any authorization or acquiescence. As such, a municipality could be held liable only under the federal claim. This dichotomy would likely confuse the jury, and could reasonably lead to a verdict that exonerates the governmental agency from § 1983 liability simply because it cannot be liable for the state tort actions. Such a result would be contrary to the interest of justice.

Exercising supplemental jurisdiction over the state law claims would require additional testimony and evidence, and would require probing into a defendant officer's alleged mental state at the time of the alleged comments. This would certainly result in more lengthy jury instructions, jury confusion, and inconvenience to the parties that would not be present if the claims were tried separately. Additionally, it would not comport with one of the underlying objectives of supplemental jurisdiction–judicial economy.

### b. Immunity

Plaintiff's state and federal law claims apply different versions of immunity, a complication in their being tried together. Under federal law, "government officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining if a government official is entitled to such qualified immunity, a court must first determine if a federal right was violated and, if so, whether that right was "so clearly established that a reasonable official would

understand that his particular conduct would violate that right." *Wilkins v. City of Royal Oak*, No. 04-73276, 2005 U.S. Dist. LEXIS 42474, at *26 (E.D. Mich. Aug. 17, 2005). A court must also determine if the officer was performing a discretionary function at the time. *Id*. This immunity is relatively straightforward and turns on the objective reasonableness of the official's actions. *See generally Harlow*, 457 U.S. 800.

Immunity under state law is remarkably different, as it applies a *subjective* standard of review to the official's actions. Unlike federal qualified immunity, officers facing claims of intentional torts "are not shielded by [Michigan's] governmental immunity statute." *Sudul v. City of Hamtramck*, 562 N.W.2d 478, 479 (Mich. Ct. App. 1997); *see* Mich. Comp. Laws § 691.1407(3). Unlike the immunity afforded from Section 1983 claims, immunity from state torts under Michigan law depends upon an officer's subjective intent at the time of the actions. And, to further complicate the matter, application of this immunity is not a straightforward process:

> Governmental immunity [under Michigan law] has been, at best, a confusing area of the law for the bench and bar of our state for many years and, unfortunately, attempts to explain it have often resulted in increasing the quagmire in which we collectively have found ourselves on this subject.

*Sudul*, 562 N.W.2d at 490 (Murphy, J., dissenting). The differences in the applicability of governmental immunity between Plaintiff's federal and state claims, as well as the "quagmire" that has evolved regarding the application of such immunity to state claims under Michigan law, are factors that would complicate the simultaneous trial of federal claims, confuse the jury and inconvenience the parties.

### c. Vicarious Liability

Another area of conflict between the federal and state claims in the present issue involves the question of vicarious liability. The law of municipal liability under Section 1983 is governed by *Monell v. Department of Social Services*, 436 U.S. 658 (1978) and its progeny. Under this line of cases, "the doctrine of *respondeat superior* is not a basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees." *Monell*, 436 U.S. at 662 n.7. Rather, municipal liability depends upon whether "someone in a supervisory capacity . . . at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending employee." *Sudul*, 562 N.W.2d at 482.

In Michigan, the law of municipal liability is markedly different from that under § 1983. Unlike federal municipal liability, which examines whether the municipality authorized or acquiesced in the alleged conduct, state liability is precluded by the immunity statute, Mich. Comp. Laws § 691.1407, which states: "a governmental agency is immune from tort liability if the agency is engaged in the exercise or discharge or a governmental function." Mich. Comp. Laws § 691.1407(1). Under the statute, a municipality can only be held liable "with respect to providing medical care or treatment to a patient." Mich. Comp. Laws § 691.1407(4).

Under the Michigan provision, municipalities enjoy broad immunity and there is no question as to any authorization or acquiescence. As such, a municipality could be held liable only under the federal claim. This dichotomy would likely confuse the jury, and could reasonably lead to a verdict that exonerates the governmental agency from

§ 1983 liability simply because it cannot be liable for the state tort actions. Such a result would be contrary to the interest of justice.

### d. Compelling Reasons Exist to Dismiss Plaintiff's State Claims

The potential for jury confusion has been identified as a compelling reason for a district court to decline to exercise supplemental jurisdiction. *Gibbs*, 383 U.S. at 727; *Barbetta v. Chemlawn Services Corp.*, 669 F. Supp. 569, 571 (W.D.N.Y. 1987); *Gasque v. King*, No. 90-00470, 1991 U.S. Dist. LEXIS 19260, at *5-6 (M.D.N.C. 1991); *Padilla v. City of Saginaw*, 867 F. Supp. 1309, 1315 (E.D. Mich. 1994); *Blue Dane Simmental Corp. v. American Simmental Ass'n*, 952 F. Supp. 1399, 1404 (D. Neb. 1997); *see* CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3567.1, n.46. (2d ed. 1984). In considering this potential, as well as the interests of economy, convenience, fairness and comity, the court finds that the state claims should be dismissed. To exercise supplemental jurisdiction over these claims would result in confusion, inconvenience and potentially unfair results given the systematic disparity between these claims, including their various legal standards, available defenses, potential immunity from suit, and potential vicarious liability. Therefore, the court will dismiss without prejudice the state law claims of false arrest and false imprisonment.

### 2. This case presents "Exceptional Circumstances"

Courts must ensure that the reasons for declining to exercise supplemental jurisdiction identified as "compelling" are not deployed in circumstances that are not "exceptional." *Executive Software*, 24 F.3d at 1558. Courts agree that the inclusion of

the phrase "exceptional circumstances" limits the broad discretion that district courts once entertained under *Gibbs* to deny supplemental jurisdiction in any case. *See, e.g.*, *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 448 (2d Cir. 1998); *Executive Software*, 24 F.3d at 1558. However, Congress only "sounded a note of caution" and did not restrict a district court's ability to dismiss claims only in cases that were "ridiculous" or "impractical." *Executive Software*, 24 F.3d at 1558, 1560 (citing *Hays County Guardian v. Supple*, 969 F.2d 111 (5th Cir. 1992) (holding that exceptional circumstances were present when parallel state proceedings were underway and therefore the adjudication of state claims would be a "waste of judicial resources")).

The court finds that exceptional circumstances are present in this case in weighing the likelihood of jury confusion, judicial inefficiency, substantial inconvenience to the parties, and potential unfairness in outcome which could readily result by attempting to resolve all claims in a single trial. Though there would be some duplication of effort required by Plaintiff and the defense in this case if Plaintiff decides to pursue all of the claims, the court finds that any advantages to be gained by trying all claims together are outweighed by the potential for confusion of the issues, legal theories, and defenses. Thus, the court will not exercise supplemental jurisdiction and will dismiss without prejudice all state law claims.

### B. DISMISSAL PURSUANT TO 28 U.S.C. § 1367(c)(2)

Separately, a district court may decline the exercise of supplemental jurisdiction pursuant to section 1367(c)(2) if "the [state] claim substantially predominates over the

claim or claims over which the district court has original jurisdiction." 28 U.S.C. § 1367(c)(4). As already discussed in detail, the state claims presented here implicate myriad problems including disparate legal theories on claims and significantly expanded and contradictory jury instructions. The court finds that the state claims presented in this case would, for these reasons, predominate over the Section 1983 federal claim over which the court has original jurisdiction. Pursuant to 28 U.S.C. § 1367(c)(2), the court will not exercise supplemental jurisdiction and will dismiss without prejudice all state law claims.

### III. CONCLUSION

Plaintiff's state law claims do not have original jurisdiction in federal court. The inclusion of Plaintiff's state claims with Plaintiff's federal claims for infringement of his constitutional rights under 42 U.S.C. § 1983 could lead to jury confusion, judicial inefficiency, inconvenience to the parties, and an unfair outcome. Additionally, these claims would predominate over Plaintiff's § 1983 federal claims. Pursuant to 28 U.S.C. §§ 1367(c)(2) and (4), the court exercises its discretion to decline supplemental jurisdiction over Plaintiff's state law claims. Accordingly,

IT IS ORDERED that all of Plaintiff's state law claims including, without limitation, claims of gross negligence (Counts V and VI), false arrest (Counts VII and VIII), and false imprisonment (Counts IX and X), are hereby DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that only Plaintiff's claims arising under federal law, 42 U.S.C. § 1983 (Counts I through IV), along with their attendant prayers for relief (Counts XI and XII), now remain before this court.

      s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated: October 25, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 25, 2010, by electronic and/or ordinary mail.

      s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522

S:\Cleland\JUDGE'S DESK\C3 ORDERS\10-13179.WALKER.DismissStateLawClaims.wpd

14